IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| NATHANIEL JACKSON, | ) | |
|---|---|---|
| | ) | Civil Action No. 2: 15-cv-00457 |
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Arthur J. Schwab |
| | ) | |
| SUPERINTENDENT FOLINO, et al, | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by Defendants Dr. Bjunghak Jin and Wexford Health Sources, Inc. (ECF No. 31), in which the Department of Corrections Defendants have joined (ECF No. 39), be granted.

It is further recommended that the motion for judgment on the pleadings filed by Defendants Dr. Bjunghak Jin and Wexford Health Sources, Inc., (ECF No. 47) be granted.

**II. REPORT**

A. *Background*

Plaintiff, Nathaniel Jackson, an inmate confined in the custody of the Pennsylvania Department of Corrections ("DOC") at the State Correctional Institution at Greene ("SCI Greene"), commenced this action on or about April 1, 2015, alleging that he received inadequate medical treatment for a broken finger he sustained on March 29, 2013. Jackson brings his claims against all defendants pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs. He also brings a separate state law negligent claim against Defendants Dr. Bjunghak Jin and Wexford Health Sources, Inc.

1

The motion for summary judgment solely addresses the issue of failure to exhaust administrative remedies. Defendants contend that although Plaintiff filed grievances which pertain to the medical treatment, or lack thereof, he received as a result of his broken finger, he did not fully exhaust his administrative remedies. Plaintiff counters that the administrative process was unavailable to him due to SCI-Greene's failure to respond to his grievances. The issue has been fully briefed and the factual record has been thoroughly developed. (ECF Nos. 32, 36, 40, 41, 42, 43, 50, and 51.) The matter is ripe for disposition.

The motion for judgment on the pleadings solely addresses Jackson's negligence claim. Jackson was ordered to respond to the motion by June 15, 2016. To date, Jackson has not responded to the motion, and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the Court will deem the motion for judgment on the pleadings to be ripe for resolution.

B. *Motion for Summary Judgment*

1. The Prison Litigation Reform Act of 1995

The Prison Litigation Reform Act of 1995 ("PLRA") provides at 42 U.S.C. § 1997e(a) that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). Exhaustion means "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition

2

to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Grievance procedures in inmate handbooks are administrative remedies that must be exhausted under the PLRA prior to suit. *Concepcion v. Morton*, 306 F.3d 1347, 1348-49 (3d Cir. 2002).

A prisoner does not have to allege in his complaint that he has exhausted administrative remedies. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. *Id.* Therefore, it must be pleaded and proven by the defendants. *Brown v. Croak,* 312 F.3d 109, 111 (3d Cir. 2002). Where the inmate has exhausted his or her administrative remedies as to some claims in a complaint but not others, the district court must consider the claims that were exhausted while dismissing the claims that are unexhausted. *Jones v. Bock*, 549 U.S. 199, 218-44 (2007).

2.  Discussion

The DOC's Grievance Policy in effect at the time Plaintiff filed his grievances (effective date Dec. 8, 2010, ECF No. 51-2), provided the following process. To initiate a claim, an inmate must file Form DC-804, Part 1 with the Facility Grievance Coordinator within 15 working days of an incident. The Facility Grievance Coordinator shall assign a tracking number and, if the form is compliant, "will designate a staff member to serve as the Grievance Officer for that grievance." (Policy Statement, DC-ADM 804, Section 1(B)(5) (ECF No. 51-2)). The Grievance Officer shall provide a written response to the inmate within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System. (*Id*. at ¶ 9). If the investigation requires more time, the Facility Manager may authorize a 10-day extension, in which case "the inmate shall be advised in writing using the Extension Form." (*Id.).*

If the grievance is denied, the inmate may appeal to the Facility Manager (in this case the Superintendent) in writing, within 15 working days from the date of the initial review response /

rejection. (*Id*. at Section 1 – Appeals). "If the appeal is denied, the inmate may appeal a second time to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within 15 days working days." *Robinson v. Superintendent Rockview SCI*, No. 14-2994, --- F.3d ---, 2016 WL 4010438 at *2 (3d Cir. July 27, 2016).

Keri Moore, the Assistant Chief of the Secretary's Office of Inmate Grievances & Appeals ("SOIGA") provided a sworn Declaration indicating that Jackson submitted two grievances to SOIGA for final review, Grievance Nos. 454987 and 457879. These grievances are discussed seriatim.

### Grievance No. 454987

The record reflects that Jackson filed Form DC-804, Part 1 on or about April 8, 2013.[1] On April 29, 2013, Jackson wrote to the Facility Grievance Coordinator, Tracy Shawley, stating that he had yet to receive a "pink copy" to his grievance filed on April 8, 2013. According to Jackson, the Pink Action Return copy provides the inmate with the grievance number, the date the grievance was received, the date the response is due, and the overall acknowledgement of receipt of the grievance. (ECF No. 42-1 at 2). Tracy Shawley responded on May 1, 2013, "you filed a grievance on this matter, await the response." (ECF No. 32-1, at 32).[2]

On July 29, 2013, Plaintiff wrote to Superintendent Folino and Tracy Shawley inquiring as to an answer to his grievance. Tracy Shawley replied that "no appeals were received by this

---

[1] The record is inconsistent on the actual date the grievance was filed. *Compare* Jackson's Declaration wherein he states the grievance was filed April 8, 2013 (ECF No. 42-1 at 2) with DC Form-804 dated 4/9/2013 (ECF No. 32-1 at 36), and DC Form-804 dated 4/10/2013 (although the receipt from SCI-Greene indicates it was received on April 09, 2013) (ECF NO. 42-2 at 2).

[2] The summary judgment record also indicates that on April 28, 2013, Jackson wrote Tracy Shawley asking about a response to a grievance filed on 4-9-13, to which she replied on April 30, 2013, that he needed "to provide the grievance number that you are talking about." (ECF No. 42-3 at 2).

4

office . . . ." (ECF No. 32-1, at 39; ECF No. 42-3 at 3). On May 28, 2013, Jackson submitted a request slip to Superintendent Folino "in order to exhaust all my grievance remedy." (ECF No. 42-3 at 5). Tracy Shawley replied back that "Grievance 454987 was processed and rejected on 4/9/13." (ECF No. 42-3 at 7). The summary judgment record, however, does not have a copy of the response / rejection from the Grievance Officer.

On August 5, 2013, Plaintiff again wrote to Superintendent Folino asking if he would be allowed to refile his grievance appeal because the "F Block officers did not turn in my appeal on 6/10/2013." (*Id.* at 42). Tracy Shawley replied, "you can refile and when rec'd the timeliness of the appeals will be considered." (*Id.* at 43). On August 13, 2013, Jackson refiled his appeal (*Id.* at 44) and on September 5, 2013, the Superintendent denied his appeal as follows:

> In reviewing your grievance and appeal, I note your concern with the rejection of your grievance.
>
> In your appeal, you state you are making an honest, good faithed (sic) statement by saying the Superintendent's Office did not receive your appeal. You are asking to refile your appeal in order to exhaust your grievance. Failing to allow you to file your grievance would be unfair because you had no knowledge that your appeal did not reach the Superintendent's Office.
>
> In closing, I can only reiterate that I uphold the response provided by the Grievance Coordinator. You received your rejection on April 9, 2013, and did not inquire about a first level appeal response until July 29, 2013. Therefore your grievance is considered untimely.

(*Id*. at 30; ECF No. 42-2 at 4). Thereafter, Plaintiff submitted an appeal to SOIGA. On October 11, 2013, SOIGA informed Jackson that the information he provided was incomplete and he needed to provide "a legible copy of your initial grievance, signed and dated – **The copy you provided has the middle part of the first page blocked out and it cannot be read.**" (ECF No. 32-1 at 27; ECF No. 42-2 at 7, 10) (emphasis in original). On October 24, 2013, Jackson wrote SOIGA and stated that he was not able to provide a legible copy because he had never

5

received the pink action return copy. On November 8, 2013, SOIGA dismissed Jackson's grievance at the final appeal level because he had "not provided [SOIGA] with required documentation for review." Specifically, SOIGA explained that "[a]s you know this office requested that you provide a legible copy of your initial grievance. <u>If you did not have a legible copy of the initial grievance, you could have requested one through the Facility Grievance Coordinator</u>. Therefore, your grievance appeal to this office is dismissed." (*Id*. at 25; ECF No. 42-12) (emphasis added).

### Grievance No. 457879

Jackson submitted a second grievance on or about May 2, 2013, (ECF No. 42-4 at 2) in which he stated that he had previously submitted a grievance regarding denial of medical attention for his broken finger, that he never received a pink "action return copy," and that he was requesting :

> a better, more efficient grievance system be put in place, due to my second issue, which is this: I wrote to the facility grievance coordinator, Tracy Shawley, on 4.28.13, asking when I'd be receiving an official response to my initial grievance. She wrote me back on 4.30.13, informing me that she never received any grievance from me on this issue. I feel that this grievance coordinator, and her co-workers have collusive, by destroying my grievance, in the hopes that my 15 working-day file period will have become exhausted. The relief I seek for this corruption is also a part of the $250,000.00 I'm requesting.

(ECF No. 32-1, at 17). On June 4, 2013, Debra Brumage denied Plaintiff's grievance as follows:

> I am in receipt of your grievance number 457879 dated May 2, 2013, therefore I am providing you with a response.
>
> You state that on 4/8/13 you submitted a grievance, explaining that you were denied adequate medical attention. To date you still haven't received your pink "action return copy". You wrote the Facility Grievance Coordinator, Tracy Shawley, on 4/28/13 asking for the response and she responded that she never received any grievance from you. You seek relief for this corruption in the $250,000 you are requesting.

6

> Mr. Jackson, all grievances received in this office are processed according to DC-ADM 804. My review finds that you failed to provide the grievance number that your complaint is against so a thorough review was not possible. I do find a grievance was received in this office from you on 4/9/13 that was rejected and returned to you.
>
> Your grievance and request for compensation is hereby denied.

(ECF No. 32-1, at 18; ECF No. 42-4 at 4). Jackson appealed and the Superintendent on September 12, 2013 denied the appeal as follows:

> In reviewing your grievance and appeal, I note your concern with submitting a grievance explaining you were denied medical attention and not receiving the pink action return copy was appropriately addressed by Ms. Brumage, AO2. In your appeal you state you have yet to get your pink action return copies back on grievance number 457879. You also claim you are not receiving adequate medical attention however Ms. Brumage did not address this issue.
>
> Upon resubmission – 5/3/13, your grievance 457879 was processed and the pink action return copy forwarded to you. I am attaching a one-time courtesy copy. Your grievance 454987 regarding the lack of medical care for your 3/29/13 finger injury was received on 4/9/13 and rejected as your grievance contained multiple issues. Furthermore, issues that pertain to 454987 must be addressed in accordance with DC-ADM 804.
>
> In closing I can only reiterate that I uphold the response provide (sic) by the grievance officer.
>
> Your grievance is found without merit and your requested relief denied.

(ECF No. 32-1, at 5). Jackson appealed to SOIGA and on October 11, 2013 he was notified that his appeal was incomplete because he needed to provide (1) "a legible copy of your appeal to Facility Manager, signed & dated – **The copy you provided has a section of your appeal blocked out and it cannot be read**" and (2) "Facility Manager's decision / response." (*Id*. at 8). On October 24, 2013, Jackson responded to SOIGA and according to his letter, he provided "a copy of a legible copy of my appeal to facility manager and a copy of facility manager's decision/ response." (ECF No. 42-11 at 2). On December 13, 2013, SOIGA issued a Final Appeal Decision dismissing Grievance No. 457879 at the final appeal level because (i) the

7

grievance was not legible, understandable, or was not presented in a courteous manner and (ii) grievances based upon different events must be presented separately. In dismissing his grievance, Jackson was informed as follows:

> Your grievance addresses inadequate medical care and you request $250,000 for the physical, emotional, and mental suffering that you have been experiencing. Your grievance then goes on to allege that Ms. Shawley and her co-workers have been destroying your grievances. These are separate issues. Additionally, the information contained on a number of the pages you include with your grievance cannot be read because of being blocked out.
>
> Your grievance is dismissed.

(ECF No. 32-1 at 2).

Viewing the facts in the light most favorable to Jackson, the summary judgment record reflects that delays may have occurred at SCI-Greene. However, the summary judgment record also reflects that Jackson's follow-up requests for a decision on his grievance(s) were not ignored and, more importantly, any delays were not relevant in the ultimate dismissal by SOIGA of Jackson's grievances. Unlike the scenario described in the recent *Robinson* decision,[3] while SCI-Greene may have failed to provide Jackson with grievance responses in a timely fashion, Jackson's attempt to seek final review from SOIGA were not thwarted by this delay. In fact, SOIGA dismissed his appeals not on the basis of untimeliness, but rather because he had not met

---

[3] In *Robinson*, the institution, SCI Rockview, did not provide a response to plaintiff's grievance until more than four months after the response deadline and six weeks after the plaintiff filed his lawsuit. The district court adopted the magistrate judge's conclusion that Robinson had not exhausted his administrative remedies prior to filing suit and that Robinson's efforts to obtain remedies were not thwarted because he "received responses to [his] grievance, and was in the process of pursuing appeals of unfavorable rulings during and after the time he initiated [his] lawsuit" *Robinson v. Superintendent Rockview SCI*, No. 14-2994, --- F.3d ---, 2016 WL 4010438 at *4 (3d Cir. July 27, 2016) (quoting App. 20). The district court agreed that "any delays at the institutional level were not substantial enough to render Robinson's administrative remedies 'unavailable'." *Id.* The appellate court disagreed and found that SCI Rockview's protracted delay in responding to Robinson's grievance and its repeatedly ignoring of his follow-up requests for a decision on his grievance rendered its administrative remedies unavailable to him.

all the necessary prerequisites to properly appealing his grievance to SOIGA, in spite of being told what documentation SOIGA needed. While the record reveals that Jackson pursued his claim correctly at the institutional level, he failed to provide SOIGA with the documents which were requested. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Robinson*, at * 4 (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The Court understands Jackson's frustration with the process he received at SCI-Greene; however, taking Jackson's allegations as true, the record is clear that Jackson failed to comply with SOIGA's requests to provide additional complete documentation, which failure resulted in Jackson failing to fully exhaust his administrative remedies. Accordingly, Defendants' motion for summary judgment should be granted.

C. *Motion for Judgment on the Pleadings*

Plaintiff has also asserted a medical malpractice claim against Dr. Jin and Wexford Medical Correctional. Pursuant to Pennsylvania Rule of Civil Procedure 1042.3, in a medical negligence case, a plaintiff is required to file a certificate of merit attesting to at least one of the following:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

9

Pa. R. Civ. P. 1042.3(a). The certificate of merit must be filed with the complaint or within sixty days after the filing of a complaint. The record reflects that by correspondence dated March 18, 2016, counsel for Defendants notified Jackson that he needed to file a Certificate of Merit within the time period prescribed by Rule 1042.3. (ECF No. 48-1 at 1). As the time for filing an appropriate certificate of merit has long passed, Plaintiff's negligence claims should be dismissed.[4]

## III. Conclusion

For the reasons stated above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendant Dr. Bjunghak Jin and Wexford Health Sources, Inc., and joined by the DOC Defendants, be granted on the ground that Plaintiff did not fully exhaust his administrative remedies pursuant to the PLRA.

It is further recommended that the motion for judgment on the pleadings filed by Defendants Dr. Bjunghak Jin and Wexford Health Sources, Inc., (ECF No. 47) be granted.

It is further recommended that judgment be granted in Defendants favor and the Clerk of Court be instructed to mark this case closed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report And Recommendation. Any party opposing the objections shall have fourteen (14) days after date of

---

[4] While Plaintiff's failure to comply with Rule 1042.3 requires dismissal of the negligence claims, the sanction imposed under state law for violation of this rule, entry of a non pros by the Prothonotary, has no precise analogue in the federal courts. Courts have stated that the federal equivalent of such a procedure is a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Rogan v. County of Lawrence*, No. 12-1375, 2013 WL 4511316, at *5 (W.D. Pa. Aug. 23, 2013) (citing *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008)).

10

service to respond to the objections. Failure to file Objections will waive the right to appeal.

*Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

Dated: August 3, 2016

cc:    NATHANIEL JACKSON
       HJ-2123
       SCI Greene
       175 Progress Drive
       Waynesburg, PA 15370
       (via U.S. First Class Mail)

       Sandra A. Kozlowski
       Pennsylvania Office of Attorney General
       (via ECF electronic notification)

       Meghan K. Adkins
       David J. Rosenberg
       Mallorie McCue
       Paula A. Koczan
       Weber Gallagher Simpson Stapleton Fires & Newby
       (via ECF electronic notification)